IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-0409-MJW

NAMIR J. SABBAGH,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

---

**OPINION AND ORDER**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Plaintiff is not disabled for purposes of the Social Security Act. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c).

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-*

*Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).  The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Discussion

At the second step of the Commissioner's five-step sequence for making determinations,[1] the ALJ found that Plaintiff "has the following severe impairments: (1) degenerative changes of the lumbar spine with sciatica; (2) Vertigo with dizzy spells; and (3) Bilateral foot pain secondary to plantar fasciitis." (AR 35.) Together with Plaintiff's non-severe limitations, the ALJ then determined that Plaintiff has the following residual functional capacity ("RFC"), as is relevant here:

> [Plaintiff] has the residual functional capacity to perform light work . . . except the claimant can engage in occasional climbing, kneeling, stooping, crouching, and crawling. [Plaintiff] is unable to engage in semi-skilled or skilled work activity due to limitations in concentration caused by chronic pain.

(AR 25.) At the fourth and fifth steps of analysis, the ALJ found that "the claimant is unable to perform past relevant work," but that he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" such that he is not disabled. (AR 41-42.)

Plaintiff asserts four errors: first, that the ALJ did not apply correct legal standard in evaluating the medical opinion evidence; second, that the ALJ made improper credibility findings; third, that the ALJ failed to consider all of Plaintiff's impairments in combination when evaluating his RFC; and fourth, that the ALJ's determination that Plaintiff can perform alternative work is not supported by substantial evidence.

---

[1] The Social Security Administration uses a five-step sequential process for reviewing disability claims.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

I.      **Weighing Medical Opinions**

Plaintiff argues that the ALJ failed to apply correct legal standard when evaluating the medical opinion evidence because: (1) he failed to apply the treating physician rule; (2) he failed to properly weigh the medical opinion evidence; and (3) because he failed to give the treating physician's opinion controlling weight.

The Commissioner is required to evaluate all evidence meeting the definition of a "medical opinion" according to specific rules. 20 C.F.R. § 404.1527. The weight to be given to an opinion must be based on "examining relationship," "treatment relationship," "supportability," "consistency," "specialization," and "any [other] factors . . . which tend to support or contradict the opinion." § 404.1527(c)(1)-(6). Medical opinions that come from a "treating source" receive preferred treatment, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [] impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  § 404.1527(c)(2). Thus, if a treating source provides a medical opinion, the opinion will be given controlling weight if it (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] record." *Id.* Good cause for rejecting a treating source may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987).

Even if it is not given controlling weight, a treating opinion will nonetheless be weighed along with all other opinions. An RFC assessment must resolve each limitation

3

proffered by a medical opinion—either adopting it, reconciling it with conflicting evidence, or explicitly declining to adopt it for specific reasons. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." (internal citation omitted)).

The Tenth Circuit has recently summarized the governing law as follows:

> When analyzing a treating physician's opinion, an ALJ first considers "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." If so, the ALJ must give the opinion controlling weight. But if the ALJ decides that "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." Relevant factors the ALJ may consider include:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

> Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons for the weight assigned to a treating physician's opinion. The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Allman v. Colvin*, ___ F.3d ___, 2016 WL 700566, at *4 (10th Cir. Feb. 23, 2016) (internal citations and ellipses omitted).

A.  Dr. Englestad

Dr. Englestad was Plaintiff's treating physician. He diagnosed Plaintiff with degenerative disc disease of his lower back, plantar fasciitis, memory loss, spondylosis, spondylolisthesis, loss of concentration, major depression, and vertigo. (AR. 561.) He stated that Mr. Sabbagh would need to spend four hours per day lying down, that he would need frequent unscheduled breaks, and that he would miss more than four days of work per month due to his impairments. (AR. 561-62.) He also stated that Plaintiff could stand and walk no more than two hours per day, and that he could sit for not more than 5 hours per day, one hour at a time. (AR 556.)

The ALJ accorded these medical opinions little weight for two reasons. First, because they were not entirely consistent with Plaintiff's reported abilities, and second, because Dr. Englestad stated that the Plaintiff was limited to this extent since the 1990s.

The Court finds legal error in the ALJ's rejection of Dr. Englestad's medical opinion for several reasons. First, the ALJ did not discuss whether the restrictions suggested by Dr. Englestad were well-supported by medically acceptable clinical and

5

laboratory diagnostic techniques. In fact, he did not address **any** medical evidence that he considered to be contrary to the treating physician's findings; he simply stated that Dr. Englestad's "opinions are not entirely consistent with the [Plaintiff's] reported abilities." (AR. 39.) Moreover, this finding is not supported by substantial evidence in the record. The ALJ stated that Plaintiff's physical limitations were at odds with his ability to prepare his own meals, drive a car, shop in stores, read and watch television. (AR 38.) However, the ALJ does not address precisely how Plaintiff's ability to perform these basic functions is incompatible with Dr. Englestad's findings as to Plaintiff's impairments and their accompanying limitations. Indeed, as Plaintiff notes, it can be reasonably argued that the restrictions are, in fact, **consistent** with Plaintiff's activities. This is especially true when you consider Plaintiff's explanations of his daily activities. He shops for "maybe 10-15 minutes" and can cook "fast meals like noodles or sandwiches that don't [take] lots of standing up" and do not take more than five minutes to prepare. (AR 240-41.) He cannot prepare meals that take 30-40 minutes, which he used to be able to do.[2] (AR 240.) And while he can still read and watch television, he does so "ineffectively because I lost my concentration." (AR 242.) It is not at all apparent how Dr. Englestad's medical opinions are undermined by Plaintiff's minimal ability to undertake these activities, and the ALJ's failure to provide an adequate explanation is an error.

As to the ALJ's reference to the fact that Dr. Englestad commented that Plaintiff "likely" had limitations in the 1990s, the Court agrees with Plaintiff that this fact alone does not excuse the ALJ from evaluating Plaintiff's current limitations. At the very least,

---

[2] The Court will note here that the ALJ identified Cafeteria Attendant as representative of the work Plaintiff can perform. (AR 42.)

the ALJ must explain how this medical opinion is affected by or consistent with the other evidence in the record, including Plaintiff's medical records, which seem to indicate a worsening of various conditions.

Even if the ALJ's decision to not give Dr. Englestad's medical opinion controlling weight was properly supported by the record, he was still required to consider whether the opinion should be rejected altogether or assigned some lesser weight in accordance with the various factors contained in 20 C.F.R. 404.1527(c). While the Court agrees that it is not necessary for the ALJ to address each factor at any length, there must be some indication, other than boilerplate language, that they were at least considered. The record is devoid of any such suggestion. The ALJ was also required to discuss the uncontroverted evidence he chose not to rely upon, as well as the significantly probative evidence he rejected. He did not do so. The ALJ provided an incomplete and cursory review of Plaintiff's objective medical tests and glossed over the treatment records that documented ongoing pain and symptoms of vertigo.[3] Finally, as described below, Dr. Englestad's opinions are largely consistent with those of the Dr. Moran and Ruth Knight, P.A., a fact that the ALJ does not address.

Accordingly, the Court finds that the ALJ failed to articulate good cause, supported by specific, legitimate reasons, for rejecting Dr. Englestad's medical opinion as Plaintiff's treating physician.

B. Dr. Moran and P.A. Knight

---

[3] Significantly, on the one occasion where the ALJ did refer to an objective medical test, he did so inaccurately. The ALJ describes a March 2014 MRI as showing "only some mild degenerative changes at multiple levels, including C3-4, C5-6, and C6-7 with only mild foraminal senosis and no central stenosis." (AR 38.) However, that MRI found "moderate disc degeneration at C2-3" and "moderate left foraminal stenosis at C6."

The ALJ gave little weight to the medical opinions of Dr. Moran because she "based her opinions on the [Plaintiff's] subjective complaints of vertigo" and because her "opinions that the [Plaintiff] would only be able to sustain 4 hours of work due to vertigo and chronic back pain as this is inconsistent with the [Plaintiff's] own stated abilities concerning his daily activities." (AR 39.) The ALJ also stated that Plaintiff declined treatments suggested by providers. The ALJ gave "less weight" to the opinions of Ms. Knight because she is a physician's assistant and because Plaintiff's range of activities is inconsistent with the limitations described by Knight. (AR 40.)

First, the Court notes that the limitations described by Dr. Moran and Ms. Knight are similar to and consistent with those provided by Dr. Englestad. Therefore, for the reasons set forth above, the ALJ's conclusory rejection of their opinions due to their purported inconsistencies with Plaintiff's reported abilities is erroneous.

Turning next to Dr. Moran, it is clear that her medical opinions were not solely based on subjective complaints as Plaintiff was "actively vomiting" when she saw him. (AR 358.) On the other hand, the ALJ accurately noted that Dr. Moran stated that "[t]here was no mention of vertigo in his medical records nor in the allegations that he gave[,]" despite the fact that Plaintiff told her he suffered from ailment "for years" and experiences it "on a daily basis and it is associated with nausea and vomiting." (AR 358.) However, "even where substantiated, the observation that a physician has relied on a claimant's subjective reports of her symptoms provides absolutely no basis for rejecting a medical source opinion." *Russ v. Colvin*, 67 F. Supp. 3d 1274, 1278 (D. Colo. 2014). Thus, the ALJ erred in relying on this rationale to discount Dr. Moran's opinion. Furthermore, while the extensiveness of Plaintiff's attempts to obtain relief may

be considered by the ALJ when evaluating his claims, *see Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988), it is unclear why this would justify rejecting Dr. Moran's medical opinions; if anything, Plaintiff's failure to seek follow-up treatment, such as surgery, goes to his credibility.

As to Ms. Knight, although the ALJ stated she was not an acceptable medical source, he still evaluated her opinions and determined that they were afforded "less weight" because they were "not supported by the objective medical evidence." (AR 40.) However, the ALJ fails to identify the objective medical evidence he refers to and how it is inconsistent with Ms. Knight's findings. The Commissioner, in its response brief, attempts to remedy this deficiency by pointing to various statements and medical records. Not only are these *post hoc* justifications improper, *see Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); many of the examples provided are misleading. For instance, the ALJ stated that Plaintiff's symptoms were relieved with the use of medication and that his physical therapy notes indicate that Plaintiff exhibited a "good prognosis," but he ignored the documentation indicating that medications were generally ineffective and the fact that Plaintiff often struggled in physical therapy due to "dizziness, fatigue, and pain." Similarly, the ALJ stated that "[i]n September 2013, the [Plaintiff] was noted to be experiencing vertigo only with rapid movements" (AR 38), while treatments records and Plaintiff's testimony indicate that this was not necessarily the case and that nausea was essentially a permanent part of Plaintiff's life. (AR 56.) The ALJ can disregard this evidence if he chooses, but he must explain why; he cannot cherry-pick only those facts that conform to his determination.

For these reasons, the Court concludes that the ALJ failed to provide good reasons, linked to specific evidence in the record, for discounting the weight to be assigned to the opinions of Dr. Moran and Ms. Knight.

## **Conclusion**

For the reasons set forth above, it is hereby ORDERED:

- That the Commissioner's decision is REVERSED, and
- That this case is REMANDED to the ALJ to

    a. Reevaluate the treating source and any other medical opinions of record, making specific findings regarding the weight assigned to each such opinion and the specific reasons therefore; and

    b. Recontact any treating or examining source, seek the testimony of medical or vocational experts, order consultative examinations, or otherwise further develop the record as he deems necessary; and

    c. Reassess the disability determination.[4]

Dated this 23rd day of March, 2017.

                                           BY THE COURT:

                                           */s/ Michael J. Watanabe*
                                           MICHAEL J. WATANABE
                                           United States Magistrate Judge

---

[4] Because the Court remands on this basis, the Court does not address Plaintiff's remaining arguments. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Russ*, 67 F. Supp. 3d at 1279.